## SARAH J. DAY *vs.* HORACE PHILBROOK.

### Cumberland.    Opinion August 13, 1892.

*Deed.    Way.    Incumbrance.    Evidence.    Action.*

An original farm was divided into two parcels by a town road running easterly from the county road to defendant's land. The defendant claimed title to the north half under the earliest deed of the same grantor, which made the town road his south line.

This deed contained these words: "Reserving the town road leading through the farm." The plaintiff acquired title to the south half of the farm under a later deed making the town road his north line. The town road was subsequently discontinued. *Held;* That the fee of the road was not reserved in

the first deed, but only in its use as an incumbrance; and that in a real action
the defendant had the better title to the whole of it.

The plaintiff further claimed title to the south half of the road as assignee of
a mortgage given by the original owner, but without an assignment of any
part of the mortgage debt. *Held;* That he cannot maintain a writ of entry
against the defendant, a grantee of the mortgagor in possession, without
first showing an existing mortgage debt.

A lost deed, never recorded, and whose contents are in dispute and which can
not be proved by witnesses who saw and read it, is not sufficient evidence
upon which to base a judgment of title to real estate not in the possession
of any grantee under it.

On report.

The case is stated in the opinion.

*Weston Thompson*, for plaintiff.
*George D. Parks*, for defendant.

Emery, J. This is a real action to recover seizin of a narrow
strip of land one and a half rods wide, over which a town road
had been laid out and afterward discontinued. The road was
laid out three rods wide but the plaintiff only seeks to recover
the southern half.

The history of events is briefly this: One Coombs owned
a farm in Brunswick, on the east side of the Freeport road.
A town way three rods wide was laid out across this farm
from the highway (the Freeport road) to the farm next east
called the Philbrook farm. Afterward, in 1867, Coombs con-
veyed his farm by deed of warranty to one Rowell. At the
end of the description in this deed were the following words:
"Reserving the town road leading through the farm." Rowell,
as a part of the same transaction mortgaged the farm back to
Coombs to secure certain notes given for part of the purchase
money. This mortgage contained the same words of reservation.

Rowell, the mortgagor in possession, afterward in 1868,
conveyed to one Hathaway by deed that part of the farm north
of the town road in question. In this deed, the conveyed land
is described as bounded "southwesterly by the road leading
from the first named road [the Freeport road], to the home of
Horace Philbrook." This boundary road is the town road re-
ferred to. Hathaway's title afterward came to the defendant.

The defendant also, in 1868, after the conveyance of Rowell to Hathaway, received from Rowell a quit claim deed of the remainder of the farm.

In 1869, Coombs (the mortgagee) conveyed the southerly part of the farm to one Brown. In this deed, the northern boundary is described as follows : "Beginning on the easterly side [of the Freeport road] at the corner of the Philbrook road ; thence south thirty-one and one half degrees east by the said road to the land of Horace Philbrook," &c. The "Philbrook road" thus made the northern boundary is the town way or road above referred to. This title of Brown afterward came to the plaintiff. Brown took possession under his deed, and his grantees have remained in possession since.

We thus find the original Coombs farm was divided into two parcels with the said "town road" for a common boundary.

In 1878, this town road was discontinued. The defendant, assuming to be the owner of the land on the north side, thereupon claimed the whole strip formerly occupied by the road as belonging to his lot and entered into possession. The plaintiff, assuming to be the owner of the land on the south side, claims that, at least, the south half of the strip belongs to his lot ; and in 1884 brought this action to recover possession, though the case did not come into the hands of the court till late in 1891.

The plaintiff relies upon the familiar principle that adjoining owners, bounded by a road as a common boundary, each takes to the middle line of the road. The defendant, however, challenges the plaintiff's title to any part of the land on the south side of the road, and denies that the plaintiff is an adjoining owner. This casts the burden on the plaintiff to show a better title than that of the defendant.

The plaintiff traces title directly back to Coombs the acknowledged original owner. But prior to giving the deed under which the plaintiff claims, Coombs had given another and, of course, earlier deed under which the defendant claims, to wit : the deed to Rowell in 1867. The plaintiff, however, contends that this prior deed to Rowell did not convey but excepted the strip of land occupied by the road, and relies upon the language of

reservation above quoted from that deed, viz: "Reserving the town road leading through the farm."

As to this contention, it seems clear to us that Coombs did not intend by those words to except from his conveyance of the whole farm the soil or land under this town road. He did not intend to interpose a barrier between different parts of the farm. We cannot see any motive. It is evident, we think, that he merely intended to exclude from his covenants of warranty, &c., the incumbrance of the town road. We think the words used have no other effect, and that, in spite of them, the fee in the strip occupied by the road passed to Rowell and hence not to the plaintiff, who does not claim under Rowell. *State* v. *Wilson*, 42 Maine, 9 ; *Kuhn* v. *Farnsworth*, 69 Maine, 404.

But Rowell, before his conveyance to the defendant's grantors, mortgaged the farm including this strip back to Coombs. Coombs afterward made the conveyance to Brown under which the plaintiff claims as above stated. The executor of Coombs, after his decease, gave a deed of all Coombs' real estate. Under this last deed the plaintiff also claims. The mortgage still appears of record undischarged and unforeclosed. The plaintiff, thereupon, contends that the mortgagee's title being superior to that of the mortgagor, he, claiming under the former, has the better title.

The case is silent as to whether Coombs, the mortgagee, was in possession at the time of his conveyance as mortgagee. The conveyance was of the land only. It was not accompanied by any assignment, legal or equitable, of any part of the mortgage debt. On the other hand, Coombs had surrendered to the mortgagor the notes representing the mortgage debt, intending thereby to release and discharge the indebtedness. This surrender of the notes and release of the indebtedness was upon consideration, though the case does not make it very clear what the consideration was. We think, however, the consideration was a release to Coombs by the mortgagor, or his grantor of the equity of redemption in some part of the mortgaged premises.

Under the foregoing circumstances, whatever may be the equitable rights and remedies of the plaintiff, in this action at law, he cannot show an existing mortgage debt, and hence can-

not maintain this writ of entry against a grantee of the mortgagor in possession. *Ellsworth* v. *Mitchell*, 30 Maine, 247 ; *Williams* v. *Thurlow*, 31 Maine, 392 ; *Lunt* v. *Lunt*, 71 Maine, 377 ; *Jordan* v. *Cheney*, 74 Maine, 359.

The plaintiff urges still another claim. It will be remembered that Rowell, the mortgagor, gave a quit claim deed of the southern part of the farm of the defendant. The plaintiff claims that the defendant afterwards gave a deed of this land, including the strip in question, to Coombs, in return for the surrender by Coombs of the mortgage notes. As above intimated, we think the evidence shows that the defendant, the mortgagor's grantee of the whole premises, did execute to Coombs a release of the equity of redemption in part of the premises, in payment and discharge of the mortgage debt. It is because of this that we adjudged the debt no longer existing. But did this deed of release include the demanded strip? The deed itself was lost before being recorded ; and unfortunately the plaintiff was unable to produce any witness who ever read, or even saw the deed. The defendant denies that the deed included the strip. How can we then adjudge that the deed did include the strip? The plaintiff asks us to infer that the description in the lost deed was the same as that in the deed from Coombs to Brown. It may be so, and morally speaking we think very probable that it is so ; but it is hardly a legal inference upon which we can safely base a judgment of title to real estate. The demanded strip was never in the possession of any grantee under the lost deed. On the contrary, as soon as the road was discontinued in 1878, the defendant took possession and has held it ever since. The inference from this would be that the lost deed did not include the strip.

Whatever the probabilities, we are reluctantly compelled by lack of legal evidence to refrain from declaring that the defendant has conveyed the demanded strip, whatever else he may have conveyed. *Kimball* v. *Morrill*, 4 Maine, 368.

*Plaintiff nonsuit.*

PETERS, C. J., WALTON, VIRGIN, HASKELL and WHITEHOUSE, JJ., concurred.